UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CARL A. BUSH,

                Plaintiff,                Case No. 1:12-cv-192

v.                                            Honorable Robert J. Jonker

MICHIGAN DEPARTMENT
OF CORRECTIONS et al.,

                Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Gracik and Smyth and will dismiss the Michigan Department of Corrections because it is immune. The Court will serve the complaint against Defendants Adellatif, Spitters, Anderson, Karnitz, Van Houten, Cooper, Vel Veldern, Britton and Helton.

**Discussion**

I.   Factual allegations

Plaintiff Carl A. Bush presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the E.C. Brooks Correctional Facility (LRF). He sues the MDOC and the following LRF employees: Dr. (unknown) Adellatif and an unknown doctor listed as John Doe; Physician Assistant (PA) (unknown) Spitters; Dietician B. Anderson; Health Unit Manager J. Gracik; and Nurses Mark A. Karnitz, Renee A. Van Houten, Brook D. Cooper, Claire Vel Veldern, Jill C. Britton, Terri Helton, (unknown) Smyth, and an unknown nurse listed as John Doe.[1]

According to the complaint, on January 30, 2011, Plaintiff sent a medical request form (kite) indicating that he was suffering from severe stomach pain, could not eat, and required urgent treatment. Defendant Vel Veldern instructed Plaintiff to keep taking his medication. On January 31, Defendant Karnitz recorded Plaintiff's report of severe pain, but indicated that Plaintiff had just been seen on January 26 by the medical practitioner and had an appointment in the near future. On February 1, Plaintiff submitted a stool sample for screening, but he never received a report back. On March 14, Plaintiff sent another medical kite, informing health care that he had blood in his stool. On March 15, he received a response that he had been scheduled for an appointment.

On March 18, 2011, Plaintiff sent another medical request, stating that he had blood in his stool and severe cramping. Defendant Van Houten entered Plaintiff's complaint in the medical

---

[1]The Court notes that, during the course of the complaint, Plaintiff has used varying spellings of the names of Defendants Adellatif, Van Houten and Vel Veldern. The spellings used in this opinion and order correspond to the spellings used in the list of Defendants in the "Parties" section of the complaint.

record, also recording that Plaintiff had been seen earlier in the week and that medical providers were waiting on lab results. Plaintiff was instructed to continue taking his medication. Plaintiff sent yet another medical kite on March 30, again indicating that he had blood in his stool and was experiencing severe pain and cramping. Defendant Britton entered the reported symptoms in the medical record and advised Plaintiff to watch the call-out list.

Plaintiff met with Defendant Spitters on April 1, at which time he begged Spitters for relief. Spitters conducted an anal probe and concluded that Plaintiff's problems were caused by hemorrhoids. Spitters issued 500 mg of naproxen and suppositories. On April 8, 2011, Plaintiff saw Dr. Adellatif. Plaintiff attempted to expain that he was suffering from severe bleeding, had blood in his stools and had severe stomach pain. Adellatif told Plaintiff that he was being seen in the Chronic Care Clinic and that nothing further could be done.

On April 18, 2011, Plaintiff passed significant blood from his rectum and became dizzy, losing consciousness for a period of time. When he awoke, he could not walk. Plaintiff was taken by wheelchair to health services. Defendant Helton took Plaintiff's vital signs and concluded that he was bleeding from hemorrhoids. Nurse Blacke, who is not a Defendant in this action, also was present. Both nurses ordered Plaintiff back to his housing unit. Approximately two-and-one-half hours later, Plaintiff completely blacked out and began passing blood from his rectum onto the floor. Plaintiff was carried to health services. An ambulance was called and Plaintiff was transported to the Mercy Hospital emergency room. On April 19, 2011, while in the hospital, Plaintiff experienced massive bleeding from the rectum and again lost consciousness. He was transferred to the intensive care unit (ICU). A surgeon informed Plaintiff that, because of the life-threatening nature of the bleeding, Plaintiff's only hope for survival was an "aggressive surgery" to

remove Plaintiff's entire colon. (Compl. ¶#22, docket #1, Page ID##9-10.) Plaintiff underwent surgery to remove his colon. He was released from the hospital on April 25, 2011.

On June 2, 2011, Plaintiff began bleeding again. Unknown Nurse John Doe told Plaintiff that it was nothing and ordered Plaintiff back to his unit. The next day, June 3, 2011, Plaintiff showed Resident Unit Officer McAlaster the excessive bleeding. Plaintiff was immediately taken to health services. Nurse Matice, who is not a Defendant in this action, took Plaintiff into Defendant Adellatif's office and showed him the excessive bleeding from Plaintiff's rectum. Plaintiff was transported to Mercy Hospital.

The doctors at Mercy Hospital ran a battery of tests to find out where Plaintiff's bleeding was occurring. They concluded that Plaintiff should not be taking naproxen, as prescribed by Defendant Spitters, because naproxen acted as a blood thinner. They also ordered that, because of Plaintiff's internal problems, he should be placed on a 4-milligram-sodium diet. Plaintiff was discharged from the hospital on June 6, 2011. On June 19, Defendant Spitters prescribed 180-milligram Tylenol tablets. Plaintiff advised Spitters that he could not take Tylenol because of his liver disorder, Hepatitis C. Spitters closed the door on Plaintiff.

On July 2, 2011, Defendant Registered Dietician B. Anderson removed Plaintiff from his 4-mg-sodium diet. Plaintiff sent a kite to Defendant Adellatif on July 14, requesting immediate placement on the prescribed diet. He received no response. On July 15, because he was experiencing digestive burning, vomiting and bleeding into his colostomy bag, Plaintiff filed a grievance. On August 1, 2011, Plaintiff was interviewed by Nurse Hamilton, who is not a Defendant, about the grievance. Hamilton refused to reinstate the prescribed low-sodium diet. Plaintiff sent a medical kite to Defendant Anderson on August 3, 2011, but no action was taken. On

August 4, custody staff contacted Nurse Wilkerson, who also is not a Defendant, advising that Plaintiff could not digest his food and that it was plugging up his colostomy bag. Plaintiff also was vomiting blood. Plaintiff was seen by Dr. Adellatif on August 17, and Plaintiff explained his need for the low-sodium diet. Defendant Adellatif advised that he would speak to Defendant Anderson about the diet. On August 19, Defendant Anderson indicated that the diet was unnecessary and that Plaintiff could eat sufficiently well off the regular food line. Plaintiff explained that most of the regular food line consisted of processed foods, which contained a lot of sodium. Anderson again refused to place Plaintiff on the low-salt diet.

On August 24, 2011, Nurse Wilkerson told Plaintiff to stop complaining about his diet. Despite Plaintiff's explanations about his pain, bleeding and vomiting, Wilkerson did nothing. On September 24, Plaintiff was bleeding from his stoma (where the colostomy bag attaches to the abdominal wall). Health care was contacted, but no treatment was provided. The following day, health care was called again after custody staff observed bleeding from the stoma. Plaintiff sent a kite to health care on September 28, indicating that he was continuing to suffer from heartburn and to vomit blood, and he was having a hard time digesting food. No action was taken. Plaintiff sent another kite on October 1, raising the same complaints. Again, no action was taken. On January 12, 2012, Plaintiff was scheduled to see the unknown Defendant doctor named as John Doe. Plaintiff submitted a urine sample and it was sent to the lab. Plaintiff discussed his severe reflux problem, advising the doctor of his constant pain and vomiting. No treatment was given. On January 14, 2012, Plaintiff was seen by Defendant Helton, who documented blood in Plaintiff's colostomy bag. Plaintiff again complained about pain, but no treatment was provided.

Plaintiff seeks nominal, punitive and compensatory damages, together with injunctive relief.

## II. Immunity

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections.

## III. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Plaintiff fails even to mention Defendants Gracik and Smyth in the body of his complaint. His allegations therefore fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), Defendant Michigan Department of Corrections will be dismissed because it is immune from suit. Defendants Gracik and Smyth will be dismissed for failure to state a claim. The Court will serve the complaint against Defendants Adellatif, Spitters, Anderson, Karnitz, Van Houten, Cooper, Vel Veldern, Britton and Helton.[2]

An Order consistent with this Opinion will be entered.


Dated:     April 11, 2012              /s/ Robert J. Jonker
                                        ROBERT J. JONKER
                                        UNITED STATES DISTRICT JUDGE

---

[2] The Court lacks sufficient information at this time to order the service of the unknown nurse and unknown doctor named as John Does.