UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARL A. BUSH,

        Plaintiff,

v.

Case No. 1:12-cv-192

Hon. Robert J. Jonker

MICHIGAN DEPARTMENT
OF CORRECTIONS, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a former state prisoner pursuant to 42 U.S.C. § 1983.[1] This matter is now before the court on "Defendants Vandervelden, Britton, Cooper, Helton, Karnitz and Vanhouten's Motion for summary judgment based solely on a failure to exhaust administrative remedies" (docket no. 18). Defendants' motion is unopposed.

    **I.**    **Plaintiff's claims**

The Court previously summarized plaintiff's claims as follows[2]:

> Plaintiff Carl A. Bush presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the E.C. Brooks Correctional Facility (LRF). He sues the MDOC and the following LRF employees: Dr. (unknown) Adellatif and an unknown doctor listed as John Doe; Physician Assistant (PA) (unknown) Spitters; Dietician B. Anderson; Health Unit Manager J. Gracik; and Nurses Mark A. Karnitz, Renee A. Van Houten [sic], Brook D. Cooper, Claire Vel Veldern [sic], Jill C. Britton, Terri Helton, (unknown) Smyth, and an unknown nurse listed as John Doe.

---

[1] Defendants note that plaintiff is currently on parole.

[2] The court's previous summary included the names of defendants as spelled in the complaint, i.e., Abdellatif (Adellatif), Vanhouten (Van Houten) and Vandervelden (Vel Veldern).

According to the complaint, on January 30, 2011, Plaintiff sent a medical request form (kite) indicating that he was suffering from severe stomach pain, could not eat, and required urgent treatment. Defendant Vel Veldern instructed Plaintiff to keep taking his medication. On January 31, Defendant Karnitz recorded Plaintiff's report of severe pain, but indicated that Plaintiff had just been seen on January 26 by the medical practitioner and had an appointment in the near future. On February 1, Plaintiff submitted a stool sample for screening, but he never received a report back. On March 14, Plaintiff sent another medical kite, informing health care that he had blood in his stool. On March 15, he received a response that he had been scheduled for an appointment.

On March 18, 2011, Plaintiff sent another medical request, stating that he had blood in his stool and severe cramping. Defendant Van Houten entered Plaintiff's complaint in the medical record, also recording that Plaintiff had been seen earlier in the week and that medical providers were waiting on lab results. Plaintiff was instructed to continue taking his medication. Plaintiff sent yet another medical kite on March 30, again indicating that he had blood in his stool and was experiencing severe pain and cramping. Defendant Britton entered the reported symptoms in the medical record and advised Plaintiff to watch the call-out list.

Plaintiff met with Defendant Spitters on April 1, at which time he begged Spitters for relief. Spitters conducted an anal probe and concluded that Plaintiff's problems were caused by hemorrhoids. Spitters issued 500 mg of naproxen and suppositories. On April 8, 2011, Plaintiff saw Dr. Adellatif. Plaintiff attempted to expain that he was suffering from severe bleeding, had blood in his stools and had severe stomach pain. Adellatif told Plaintiff that he was being seen in the Chronic Care Clinic and that nothing further could be done.

On April 18, 2011, Plaintiff passed significant blood from his rectum and became dizzy, losing consciousness for a period of time. When he awoke, he could not walk. Plaintiff was taken by wheelchair to health services. Defendant Helton took Plaintiff's vital signs and concluded that he was bleeding from hemorrhoids. Nurse Blacke, who is not a Defendant in this action, also was present. Both nurses ordered Plaintiff back to his housing unit. Approximately two-and-one-half hours later, Plaintiff completely blacked out and began passing blood from his rectum onto the floor. Plaintiff was carried to health services. An ambulance was called and Plaintiff was transported to the Mercy Hospital emergency room. On April 19, 2011, while in the hospital, Plaintiff experienced massive bleeding from the rectum and again lost consciousness. He was transferred to the intensive care unit (ICU). A surgeon informed Plaintiff that, because of the lifethreatening nature of the bleeding, Plaintiff's only hope for survival was an "aggressive surgery" to remove Plaintiff's entire colon. (Compl. ¶#22, docket #1, Page ID##9-10.) Plaintiff underwent surgery to remove his colon. He was released from the hospital on April 25, 2011.

On June 2, 2011, Plaintiff began bleeding again. Unknown Nurse John Doe told Plaintiff that it was nothing and ordered Plaintiff back to his unit. The next day, June 3, 2011, Plaintiff showed Resident Unit Officer McAlaster the excessive bleeding. Plaintiff was immediately taken to health services. Nurse Matice, who is not a Defendant in this action, took Plaintiff into Defendant Adellatif's office and showed him the excessive bleeding from Plaintiff's rectum. Plaintiff was transported to Mercy Hospital.

The doctors at Mercy Hospital ran a battery of tests to find out where Plaintiff's bleeding was occurring. They concluded that Plaintiff should not be taking naproxen, as prescribed by Defendant Spitters, because naproxen acted as a blood thinner. They also ordered that, because of Plaintiff's internal problems, he should be placed on a 4-milligram-sodium diet. Plaintiff was discharged from the hospital on June 6, 2011. On June 19, Defendant Spitters prescribed 180- milligram Tylenol tablets. Plaintiff advised Spitters that he could not take Tylenol because of his liver disorder, Hepatitis C. Spitters closed the door on Plaintiff.

On July 2, 2011, Defendant Registered Dietician B. Anderson removed Plaintiff from his 4-mg-sodium diet. Plaintiff sent a kite to Defendant Adellatif on July 14, requesting immediate placement on the prescribed diet. He received no response. On July 15, because he was experiencing digestive burning, vomiting and bleeding into his colostomy bag, Plaintiff filed a grievance. On August 1, 2011, Plaintiff was interviewed by Nurse Hamilton, who is not a Defendant, about the grievance. Hamilton refused to reinstate the prescribed low-sodium diet. Plaintiff sent a medical kite to Defendant Anderson on August 3, 2011, but no action was taken. On August 4, custody staff contacted Nurse Wilkerson, who also is not a Defendant, advising that Plaintiff could not digest his food and that it was plugging up his colostomy bag. Plaintiff also was vomiting blood. Plaintiff was seen by Dr. Adellatif on August 17, and Plaintiff explained his need for the low-sodium diet. Defendant Adellatif advised that he would speak to Defendant Anderson about the diet. On August 19, Defendant Anderson indicated that the diet was unnecessary and that Plaintiff could eat sufficiently well off the regular food line. Plaintiff explained that most of the regular food line consisted of processed foods, which contained a lot of sodium. Anderson again refused to place Plaintiff on the low-salt diet.

On August 24, 2011, Nurse Wilkerson told Plaintiff to stop complaining about his diet. Despite Plaintiff's explanations about his pain, bleeding and vomiting, Wilkerson did nothing. On September 24, Plaintiff was bleeding from his stoma (where the colostomy bag attaches to the abdominal wall). Health care was contacted, but no treatment was provided. The following day, health care was called again after custody staff observed bleeding from the stoma. Plaintiff sent a kite to health care on September 28, indicating that he was continuing to suffer from heartburn and to vomit blood, and he was having a hard time digesting food. No action was taken. Plaintiff sent another kite on October 1, raising the same

3

> complaints. Again, no action was taken. On January 12, 2012, Plaintiff was scheduled to see the unknown Defendant doctor named as John Doe. Plaintiff submitted a urine sample and it was sent to the lab. Plaintiff discussed his severe reflux problem, advising the doctor of his constant pain and vomiting. No treatment was given. On January 14, 2012, Plaintiff was seen by Defendant Helton, who documented blood in Plaintiff's colostomy bag. Plaintiff again complained about pain, but no treatment was provided.
>
> Plaintiff seeks nominal, punitive and compensatory damages, together with injunctive relief.

Opinion at pp. 2-6 (docket no. 4) (footnote omitted).

The court dismissed defendants MDOC, Gracik and Smyth, but ordered service on defendants Abdellatif, Spitters, Anderson, Karnitz, Vanhouten, Cooper, Vandervelden, Britton and Helton with respect to Eighth Amendment claims. *See* Opinion (docket no.4); Order Regarding Partial Dismissal and Partial Service (docket no. 5).

### II. Defendants' motion for summary judgment

### A. Legal standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Defendants seeks summary judgment on the ground that plaintiff failed to exhaust his administrative remedies prior to filing suit. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

4

judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Here, defendants' motion is unopposed. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted

automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2nd Cir. 1996). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

### B. Exhaustion

### 1. Exhaustion requirement

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grieveable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 2. Plaintiff's grievances

Defendants have identified four grievances which plaintiff exhausted through Step III: LRF-11-05-00775-12d1 ("775") (docket no. 19-4); LRF-11-07-1190-12h ("1190") (docket no. 19-5); LRF-11-08-1345-12h ("1345") (docket no. 19-6); and LRF-11-12-2083-12d1 ("2083") (docket no. 19-7). See MDOC Prisoner Step III Grievance Report (docket no. 19-3).

#### a. Grievance No. 775

Grievance no. 775 involved an incident date of May 9, 2011 (defendants refer to a incident date of May 11, 2011, which is the date plaintiff submitted the grievance), and directed at the health care department. *See* Grievance no. 775. In this grievance, plaintiff complained that he had not been "provided with the medically necessary health care service that is required to be supported by evidence based on medical research." *Id.* The grievance referred to complaints (kites) regarding severe pain and blood in his stool which were responded to by defendants Karnitz (Jan. 31, 2011), Vanhouten (March 18, 2011), Cooper (March 22, 2011), and Britton (March 30, 2011). *Id.* Defendants point out that plaintiff's complaint did not allege any cause of action arising from the May 9, 2011 incident date as alleged in the grievance. While the Step I response did not mention the names of defendants Karnitz, Vanhouten, Cooper and Britton, the response addressed plaintiff's treatment from January 31, 2011 through April 18, 2011, including his kites or health care requests sent between those dates. Notably, the MDOC did not reject this grievance as untimely and addressed the merits of plaintiff's grievance through Steps I, II and III. Because the MDOC waived the timeliness requirement when plaintiff filed this grievance, no notions of comity are violated if this court does the same. Under these circumstances, the court concludes that plaintiff has properly

exhausted his claims against defendants Karnitz, Vanhouten, Cooper and Britton with respect to the kites referred to in this grievance.

        **b.**        **Grievance no. 1190**

Grievance no. 1190 involved an incident date of July 15, 2011. *See* Grievance no. 1190. This grievance involves plaintiff's desire to reinstate his "Residual Diet" as related to his diagnosis of acid reflux. *Id.* This grievance does not name any of the six defendants bringing the present motion for summary judgment as required by Policy Directive as required by 03.02.130.

        **c.**        **Grievance no. 1345**

Grievance 1345 involved an incident date of August 3, 2011. *See* Grievance no. 1345. This grievance names former defendant Gracik, "all LRF RN's"; Dr. Abdellatif, PA Spitters, and D. Anderson. *Id.* The MDOC construed plaintiff's grievance as claiming that his serious medical needs are being ignored and health services is trying to save money by discontinuing his 4 gram sodium diet. *Id.* First, this grievance does not name any of the six defendants bringing the present motion for summary judgment. Plaintiff's attempt to grieve "all LRF RN's" is contrary to Policy Directive 03.02.130., which requires that he name the people being grieved. Second, plaintiff's complaint does not allege a claim against these six defendants occurring on August 3, 2011. The only reference to this date is found in ¶ 33 of the complaint, which alleged that plaintiff filled out a request directed to defendant B. Anderson.

        **d.**        **Grievance no. 2083**

Grievance no. 2083 involved an incident date of December 2, 2011. *See* Grievance no. 2083. Plaintiff named defendants PHS, Abdellatif, Spitters, the MDOC and "LRF Health Care staff." *Id.* This grievance involved a diagnosis of a urinary tract infection which "Health Care staff

collectively have let manifest without issuing medication/relief." *Id.* As an initial matter, plaintiff has not named any of the six defendants at issue in this motion. Plaintiff's blanket listing of "LRF Health Care Staff" does not meet the requirement that he name the people being grieved. *See* Policy Directive 03.02.130. In addition, plaintiff has not alleged any particular event that occurred on December 2, 2011. Finally, as defendants point out, this grievance was not exhausted at Step III until April 17, 2012, about one and one-half months after plaintiff filed this action on March 1, 2012. Plaintiff did not properly exhaust this claim prior to filing the present action. *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999) (a prisoner may not exhaust administrative remedies during the pendency of the federal civil rights action based upon that grievance); *Cameron v. Howes*, No. 1:10-cv-539, 2012 WL 3686535 (W.D. Mich. Aug. 6, 2012) and 2012 WL 3655460 (Aug. 24, 2012) (claim which was not exhausted until after prison filed his civil rights action was not properly exhausted).

      **3.    Discussion**

As an initial matter, none of the grievances named defendants Vandervelden and Helton. Because plaintiff failed to file a grievance against Vandervelden and Helton, he has failed to properly exhaust a grievance against them as required by the PLRA. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93; *Sullivan v. Kasajaru*, 316 Fed. Appx. 469, 470 (6th Cir. 2009) (affirming dismissal for lack of exhaustion where prisoner failed follow requirements of Policy Directive 03.02.130, which explicitly required him to name each person against whom he grieved, citing *Jones* and *Woodford*). Similarly, plaintiff failed to name defendants Britton, Cooper, Karnitz and Vanhouten in grievance nos. 1190, 1345 and 2083. Because plaintiff has not properly exhausted

9

the claims addressed in these grievances against defendants Britton, Cooper, Karnitz and Vanhouten can be asserted in the present action against these four defendants. *Id.*

The court concludes that plaintiff has exhausted his claims against the four defendants referenced in grievance no. 775. Specifically, plaintiff has exhausted his claims as follows: against defendant Karnitz with respect to the January 31, 2011 kite; against defendant Vanhouten with respect to the March 19, 2011 kite; against defendant Cooper with respect to the March 22, 2011 kite; and against defendant Britton with respect to the March 30, 2011 kite. With respect to defendants Karnitz, Vanhouten, Cooper and Britton, they should be granted summary judgment as to all claims except for those related to their respective kite responses made in January and March 2011.

**IV.    Recommendation**

For the reasons set forth above, I respectfully recommend that the motion for summary judgment (docket no. 18) be **GRANTED** as to defendants Vandervelden and Helton.

I further recommend that the motion for summary judgment be **GRANTED** as to defendant Karnitz with respect to all claims except those arising from a kite response made on or about January 31, 2011.

I further recommend that the motion for summary judgment be **GRANTED** as to defendant Vanhouten with respect to all claims except those arising from a kite response made on or about March 18, 2011.

I further recommend that the motion for summary judgment be **GRANTED** as to defendant Cooper with respect to all claims except those arising from a kite response made on or about March 22, 2011.

I further recommend that the motion for summary judgment be **GRANTED** as to defendant Britton with respect to all claims except those arising from a kite response made on or about March 30, 2011.


Dated: February 11, 2013 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).