UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CARL A. BUSH,

        Plaintiff,

v.

MICHIGAN DEPARTMENT
OF CORRECTIONS, *et al.*,

        Defendants.

_____/

Case No. 1:12-cv-192

Hon. Robert J. Jonker


**REPORT AND RECOMMENDATION**

        This is a civil rights action brought by a former state prisoner pursuant to 42 U.S.C. § 1983.[1]  Plaintiff has alleged that defendants were deliberately indifferent to his serious medical needs.   As discussed in a previous report and recommendation, plaintiff alleged that he suffered from a variety of symptoms, including severe stomach pain, blood in his stool, vomiting, the removal of his colon in April 2011, and blood in his colostomy bag.[2]  After initial screening, the court ordered service on defendants Dr. Badawu Abdellatif, PA Daniel Spitters, Dietician Barbara Anderson, RN Mark Karnitz, RN Renee A. VanHouten, RN Brooke Cooper and RN Jill Britton. *See* Order (docket no. 5).  The court previously granted summary judgment as to RN Karnitz with respect to all claims except those arising from a kite response made on or about January 31, 2011; as to RN VanHouten with respect to all claims except those arising from a kite response made on or about March 18, 2011; as to RN Cooper with respect to all claims except those arising from a kite

_____

[1] Defendants note that plaintiff is currently on parole.

[2] *See* Report and Recommendation at pp. 1-4 (docket no. 29).

response made on or about March 22, 2011;[3] and as to RN Britton with respect to all claims except those arising from a kite response made on or about March 30, 2011.  *See* Order (docket no. 30).  This matter is now before the court on a motion for summary judgment filed by Dietician Anderson (docket no. 24) and the second motion for summary judgment filed by RN Britton, RN Cooper, RN Karnitz and RN VanHouten (docket no. 31).  Defendants' motions are unopposed.

## II.    Defendants' motion for summary judgment

### A.    Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present

---

[3] The record developed on defendants' motion for summary judgment established that RN Cooper's kite response at issue, previously identified as made on or about March 22, 2011, was actually made at 1:34 a.m. on March 23, 2011.  *See* Cooper Kite Response (docket no. 33-2).

significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although defendants' motion is unopposed, "[t]he fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2nd Cir. 1996). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

## B. Eighth Amendment claims

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws

of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff claims that defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Hudson*, 503 U.S. at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an

excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

### 1. Dietician Anderson

Plaintiff set forth the following allegations against Dietician Anderson. At some point after April 19, 2011, doctors "mandated" that plaintiff's diet consist of no more than 4 grams of sodium "because of digestive changes." Compl. at ¶ 5. On or about June 11, 2011, doctors from Mercy Hospital concluded that plaintiff, "because of internal disruptions, should be on a 4 milligram Sodium diet." *Id.* at ¶ 26. On or about July 2, 2011, Anderson sent an e-mail to food services indicating that plaintiff should be removed from his 4 mg. sodium diet "issued by the Specialists at Mercy Hospital." *Id.* at ¶ 29. On or about August 19, 2011, plaintiff met with Anderson, who indicated that she did not care about plaintiff's "4 mg. Sodium diet" and "that the food off the regular line was more than sufficient." *Id.* at ¶ 36. Anderson told plaintiff "that she would not honor the Surgeon's mandates and would not place [him] on the required diet." *Id.*

Dietician Anderson filed an uncontested affidavit in which she denied plaintiff's allegations. As an initial matter, Anderson points out that plaintiff's claims against her are based upon the inaccurate premise that plaintiff required a 4 mg sodium diet. In her uncontested affidavit in support of the motion for summary judgment, Anderson explained that "a 4 mg sodium diet cannot be obtained using whole foods," because, for example, one slice of low sodium bread has 8

mg of sodium. Barbara Anderson Aff. at ¶ 5 (docket no. 25-2). If plaintiff's claims are interpreted as requiring 4 gram sodium diet, Anderson stated that the MDOC does not offer such a therapeutic diet and that food purchasing order specifications are written to minimize sodium content so that the total daily sodium content average is less than 4 grams. *Id.* "Although some foods on the Statewide Standard Menu are higher in sodium, the total sodium content for the day averages less than 4 grams and the higher sodium foods do not make up a substantial amount of what is on the menu." *Id.* at ¶ 7. Furthermore, Anderson denied that she had petitioner removed from his low sodium diet. *Id.* at ¶ 8.

Dietician Anderson sets forth the following chronology of events with respect to plaintiff's allegations. On April 29, 2011, Anderson reviewed plaintiff's hospital discharge records, which recommended that plaintiff be placed on a short-term, low residue diet. *Id.* at ¶ 9. Consistent with this recommendation, Anderson requested and received approval for a low residue diet for 30 days. *Id.* at ¶ 10. This diet was extended one time with an expiration date of July 2, 2011. *Id.* at ¶ 12.

On August 8, 2011, Anderson received a health care request from plaintiff requesting a 4 gram sodium diet. *Id.* at ¶ 13. Anderson saw plaintiff for an appointment on August 19, 2011, at which time Anderson explained to plaintiff that the regular meal line meets the 4 gram sodium restriction and that he did not need a therapeutic diet order to receive the 4 gram sodium diet. *Id.* In addition, Anderson explained to plaintiff how to self-select from the regular meal line to limit sodium and also offered to review how to self-select from the regular meal line for reflux and colostomy. *Id.* at ¶ 14. Plaintiff, however, told Anderson that he already had all the information that she had previously provided and he did not need to hear it again. *Id.* at ¶ 15. Plaintiff went on to

state his disagreement that the regular meal line menus would provide the recommended 4 gram sodium restriction. *Id.* Anderson did not indicate at any time during this conversation that she "did not care about Plaintiff's 4 mg Sodium diet." *Id.* at ¶ 16. Instead, she explained to plaintiff that he was already on a 4 gram sodium diet, that the 4 gram sodium recommendation from the hospital was already available to him by self-selecting on the regular meal line and that due to this, the hospital recommendations were being provided to him without a diet order. *Id.*

The uncontested record reflects that plaintiff had a basic misunderstanding about the low sodium diet, specifically his insistence on a 4 mg. sodium diet and that Dietician Anderson did not ignore plaintiff's condition. At most, plaintiff's claim against Anderson involves a difference of opinion between the prisoner and the dietician. The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). This action falls in the latter category. "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004), quoting *Westlake*, 537 F.2d at 860 n. 5. While a plaintiff disagrees with the doctor's medical judgment and wants to have treatment contrary to that judgment, this disagreement does not rise to the level of a federal constitutional claim. *See Woodberry v. Simmons*, 146 Fed.Appx. 976, 977 (10th Cir. 2005) ("a difference of opinion between a prisoner and the prison medical staff about medical treatment does not constitute deliberate indifference"); *Owens v. Hutchinson*, 79 Fed. Appx. 159, 161 (6th Cir. 2003) ("[a] patient's disagreement with his physicians over the proper medical

treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim"); *Wright v. Genovese*, 694 F.Supp.2d 137, 155 (N.D.N.Y. 2010) ("[d]isagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment"). Accordingly, Dietician Anderson is entitled to summary judgment on plaintiff's Eighth Amendment claim.

### 2. RN Karnitz

Plaintiff alleged that on January 31, 2011, RN Karnitz made an entry in his medical file of his pain and suffering, that plaintiff had been seen by the Medical Practitioner (MP) on January 26, 2011, that plaintiff was scheduled to see the MP in the very near future, and to keep taking his medications. Plaintiff alleged that Karnitz's response did not provide preventive or corrective treatment. Compl. at ¶ 12.

In an uncontested affidavit in support of the motion for summary judgment, RN Karnitz acknowledged that he responded to Bush's Healthcare kite, but stated that the remainder of plaintiff's allegations are inaccurate. *See* Mark Karnitz Aff. at ¶ 4 (docket no. 32-2). According to RN Karnitz, plaintiff's kite indicated that he had been receiving on going chronic care for gastroesophageal reflux disease (GERD), had met with Registered Dietician Anderson regarding the self-selection of appropriate foods, but was still experiencing stomach pains and would like additional help so he could eat without experiencing reflux symptoms. *Id.* at ¶ 5. Karnitz responded to plaintiff's request on January 31, 2011, at 6:53 a.m., informing plaintiff that he was scheduled to be seen by the MP very soon, to continue taking his medications as prescribed and avoid spicy, acidic foods. *Id.* at ¶ 6; Karnitz Kite Response (docket no. 33). Karnitz also provided Bush with

some self-help educational materials to further assist him in his self-selection of appropriate foods. Karnitz Aff. at ¶ 7; Karnitz Kite Response.  Based on the symptoms described in plaintiff's kite, the fact that plaintiff was receiving on-going treatment and medication for reflux, and that an appointment to see the MP was already scheduled, Karnitz did not believe that circumstances warranted additional intervention at that time.  *Id.* at ¶ 8.

Contrary to plaintiff's claim, the uncontested record demonstrates that RN Karnitz responded to plaintiff's complaint.  RN Karnitz noted that plaintiff was receiving on-going medical care for his condition and provided him with dietary materials to help with his acid reflux.  There is no evidence that RN Karnitz was deliberately indifferent to plaintiff's serious medical needs.  *See Graham*, 358 F.3d at 385; *Westlake*, 537 F.2d at 860 n. 5.  RN Karnitz is entitled to summary judgment on plaintiff's remaining claim against him.

### 3.  RN VanHouten

Plaintiff alleged that on March 18, 2011, he sent a medical request "indicating he had blood in his stool, he was cramping and in pain."  Compl. at ¶ 15.  RN VanHouten made an entry in his medical file that plaintiff had been seen earlier in the week and they are awaiting the lab results, and to keep taking his medications.  *Id.*  Plaintiff alleged that VanHouten did not provide preventive or corrective treatment.  *Id.*

In an uncontested affidavit in support of the motion for summary judgment, RN VanHouten acknowledged that she responded to plaintiff's Healthcare kite, but stated that the remainder of plaintiff's allegations are inaccurate.  *See* Renee A. VanHouten Aff. at ¶ 4 (docket no. 32-3).  According to RN VanHouten, plaintiff's kite indicated that he had blood in his stool and that his stomach was hurting.  *Id.* at ¶ 5; VanHouten Kite Response (docket no. 33-1). VanHouten

responded to plaintiff's request on March 19, 2011, at 9:39 a.m., informing him that he had already been seen that week for a similar complaint and that the lab results from that encounter have not yet been received. VanHouten Aff. at ¶ 6; VanHouten Kite Response. She informed plaintiff to continue taking his medications as prescribed and avoid any irritation to his rectal area. *Id.* Based on the symptoms described in plaintiff's kite, the fact that he had just been seen for a similar complaint and that those lab results were pending, VanHouten stated that she did not believe that circumstances warranted additional intervention at that time. VanHouten Aff. at ¶ 7.

Contrary to plaintiff's claim, the uncontested record demonstrates that RN VanHouten responded to plaintiff's request for medical care. Plaintiff was receiving on-going medical care for his condition. There is no evidence that RN VanHouten was deliberately indifferent to plaintiff's serious medical needs. *See Graham*, 358 F.3d at 385; *Westlake*, 537 F.2d at 860 n. 5. Defendant RN VanHouten is also entitled to summary judgment on plaintiff's remaining claim against her.

### 4. RN Cooper

Plaintiff next alleged that on March 23, 2011, he sent an additional medical request "indicating he had blood in his stool, the blood was deep and dark in color, he was cramping and in pain." Compl. at ¶ 16. According to plaintiff, RN Cooper acknowledged plaintiff's complaint by entering into plaintiff's medical record that he was scheduled to be assessed by "nursing." *Id.* Plaintiff alleged that Cooper did not provide preventive or corrective treatment. *Id.*

In an uncontested affidavit in support of the motion for summary judgment, RN Cooper acknowledged that she responded to plaintiff's Healthcare kite, but stated that the remainder of plaintiff's allegations are inaccurate. *See* Brooke Cooper Aff. at ¶ 4 (docket no.32-4). According

to RN Cooper, plaintiff's kite indicated that he had blood in his stool and that his stomach was cramping. *Id.* at ¶ 5; Cooper Kite Response (docket no. 33-2). Cooper responded to plaintiff's request on March 23, 2011, at 1:34 a.m., informing him that he was scheduled to be assessed by nursing. *Id.* at ¶ 6; Cooper Kite Response. Cooper was not involved in the nursing assessment which took place that same day. Cooper Aff. at ¶ 7. The uncontested record demonstrates that RN Cooper responded to plaintiff's request for medical care. Plaintiff was receiving on-going medical care for his condition. There is no evidence that RN Cooper was deliberately indifferent to plaintiff's serious medical needs. *See Graham*, 358 F.3d at 385; *Westlake*, 537 F.2d at 860 n. 5. Accordingly, defendant RN Cooper is entitled to summary judgment on plaintiff's remaining claim against her.

### 5. RN Jill Britton

Finally, plaintiff alleged that on March 30, 2011, he sent a medical request "indicating he had blood in his stool, he was cramping and in pain," that this was not normal, and that medical staff were not doing anything. Compl. at ¶ 17. According to plaintiff, RN Britton made an entry in his medical file and instructed plaintiff to watch the call-out list as he would be seen shortly. *Id.*

In an uncontested affidavit in support of the motion for summary judgment, RN Britton acknowledged that she responded to plaintiff's Healthcare kite, but stated that the remainder of plaintiff's allegations are inaccurate. *See* Jill Britton Aff. at ¶ 4 (docket no. 32-5). Plaintiff indicated that this was his fourth kite which reported blood in his stool and stomach cramps. *Id.* at ¶ 5. Britton responded to plaintiff's request on March 31, 2011, at 6:55 a.m., informing plaintiff that he had previously been assessed on March 23, 2011 and that he was scheduled to be seen by the

MP for further evaluation. *Id.* at ¶ 6; Britton Kite Response (docket no. 33-3 at p. 2). Britton also informed plaintiff to watch for his appointment time and if his symptoms worsened to contact Healthcare. *Id.* Based on the symptoms described in plaintiff's kite, the fact that he had already been assessed by nursing, and that an appointment to see the MP was already scheduled, Britton did not believe that circumstances warranted additional intervention at that time. Britton Aff. at ¶ 7. Plaintiff's appointment with the MP took place the following day. *Id.* at ¶ 8; Provider Visit (April 1, 2011) (docket no. 33-3 at pp. 4-6). Contrary to plaintiff's claim, the uncontested record demonstrates that plaintiff was receiving ongoing medical care for his condition. There is no evidence that RN Britton was deliberately indifferent to plaintiff's serious medical needs. *See Graham*, 358 F.3d at 385; *Westlake*, 537 F.2d at 860 n. 5. Defendant RN Britton is entitled to summary judgment on plaintiff's remaining claim against her.

## IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendant Barbara Anderson's motion for summary judgment (docket no. 24) be **GRANTED** and that she be dismissed from this action. I further recommend that defendants Britton, Cooper, Karnitz and VanHouten's second motion for summary judgment (docket no. 31) be **GRANTED** and that they be dismissed from this action.

Dated: August 8, 2013 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).